Our fifth case for this morning is Beal v. Beller, Mr. Shauf Thank you and may it please the court. My name is Zach Shauf and I'm here for a plaintiff, Charles Beal. So this appeal is basically about the application of the summary judgment standard. A Wisconsin state court has already held that defendants stopped and frisked if Mr. Beal violated his Fourth Amendment rights. The question here is whether the district court erred in granting summary judgment against Mr. Beal on his Section 1983 claim concerning those same facts. We've got several arguments for why the judgment bill was wrong, but in my time here, I plan to focus on two. First, that a jury could reasonably find that defendants had no reasonable suspicion to stop Mr. Beal based on an anonymous tip. And second, that the jury could reasonably find that defendants lacked probable cause to search Mr. Beal's pocket based on a soft bulge they perceived during a pat-down that felt similar to tissue paper or plastic bags. Now, isn't the context highly relevant in the Terry's stop analysis? For instance, although furtive moments, placing a hand in his pocket and nervousness might not provide reasonable suspicion in general, is it enough when the person is also allegedly involved in dealing heroin, given the well-established correlation between gun possession and drug dealing? Well, so, Your Honor, I think the answer to that depends in part how you resolve this threshold factual issue about whether there was a dispute, a material dispute of fact over whether the tipster here was anonymous. If this is just an anonymous tip, then under the Supreme Court's decision in Florida v. J.L., I think you regard the tip itself as just fundamentally unreliable because there's no verification of the… I don't get that. Well, so, I think the core point at the heart of… What's the theory? Is it the tipster is trying to get the tippy, or whatever you want to call him, into trouble? Is that the idea? Well, so, I think there's two points that drove the Supreme Court's decision in J.L. One is if the tipster is anonymous, then the police just have no particular reason to believe whether they're reliable or not. That's not true. That isn't true. It's not that common to falsely tip off the police. They're common. They're besieged by phone calls, by phonies. Well, so, respectfully, Your Honor, I think this is essentially what the court said in Florida v. J.L. Is there evidence for this? Is there evidence that this is a problem? Anonymous tips are useless? I think the Supreme Court's decision in Florida v. J.L. Did they base it on evidence? I mean, I'm not sure. I don't think they had sociological evidence in the record, but as it comes to this court, I mean, it is binding precedent. The Supreme Court said that if all we have is an anonymous tip, then there's nothing to deter those sorts of… There's more than the tip here. Well, there's nothing… Let me just say, I thought that the theory of J.L. was that it's very easy to say, you know, that there's a man who appears to be around 35 years old standing at the corner of Dearborn and Jackson. He's wearing a green sweater. And the J.L. situation, he's concealing a gun or he has drugs. And it's very easy for anybody driving through downtown Chicago to describe the man who's standing at the corner of Jackson and Adams. The other part of the allegation is impossible to see because it's supposedly concealed, but you could cause a lot of mischief. I thought it was the grudge theory, basically, and that it's just too easy to describe anybody through these external things. Now, if you have some prior record of reliability, then maybe you believe the person. But the question here is, do we have anything much more than an African-American man in a yellow shirt who's standing near 58th and 11th Avenue? So, Your Honor, I agree with your characterization of Florida v. J.L. I do think that's what it's based on. And the answer to your follow-up question of whether we have anything more here, I think the answer is no, at least under this court's precedent. From the tip itself. Now, didn't the tipster give his name? There's a dispute in the record over that. And we think this is the sort of key issue in this appeal. If there's evidence from which a jury could infer the tipster... Did the police record someone's, I mean, make a note of the phone number of the anonymous tipster? There's no evidence that there was a sort of caller ID function on the phone here that would allow the police to identify who called. The other side points out that there's evidence in the record that the tip here was recorded. But that's not really helpful at all on this grudge theory, Your Honor. Because, I mean, imagine you're sitting there, you're in the Chicago PD, and you get an anonymous call that turns out to be false. And what you have, all you have, is a voice recording of the person. That doesn't help you narrow down who in the city, in the country, in the world might have given this false tip. So is this a problem, anonymous tipsters giving false tips? Is there literature on this? Is there literature on this? There may be. I can't point you to it here. But I do think that this was the essential... As far as you know, there isn't. I suspect that the Supreme Court would not have ruled the way it did in Florida v. Jail if this wasn't... Don't speculate on what the Supreme Court was thinking. Well, respectfully, Your Honor, I think the question is... I think what you're trying to say here is that the tip failed to include details or predictive information that would add to the credibility of the tip. Because it would seem that the only information was that there was this African-American man wearing a yellow shirt and brown pants, and he's selling heroin. Period. That's right, Your Honor. And the other point I would make is that Florida v. Jail actually goes farther than most Supreme Court cases in kind of telling you where the line falls. So in its discussion, it distinguishes a prior decision in Alabama v. White where there was all sorts of predictive information that the police then verified. It was also an anonymous tip, but it said a particular person is going to leave this specific apartment at a specific time and go to a specific other location. Jail actually says that, with all that corroborating evidence, is still a closed case. And we don't have anything in that league here. I see him into my rebuttal, so if I can reserve the remainder of my time. Sure, you may. Mr. Dumez, or Dumez, as you wish. Thank you, Your Honor. It is Dumez. Bob Dumez and I represent Detectives Miller and Strelow. Your Honor, the discussion so far has assumed that the tip that came to the police was anonymous. Don't we have a dispute of fact on that? There's a reason that we have done that. You know, you argue that there's no evidence that it was anonymous, but the officer's report identified it as a tip without identifying a source. And isn't that a reasonable inference that if the source was an informant, that would have been included in the report? I mean, we don't expect the name of the informant. And you have the sworn criminal complaint, which you say, well, they didn't read the report right, that there's plenty of time for conversation as well. So I'm afraid that you're just pushing beyond the scope of a 12B6. Well, Your Honor, with respect to the criminal complaint, the prosecutor acknowledges that she has no firsthand knowledge, and she is basing her complaint on the reports of Detective Strelow. Reports, plural, that's right. And so that's why I'm saying she swears out this complaint. Maybe at a trial you could impeach that evidence and say her statement that Strelow and Beller received an anonymous tip was mistaken, and the Beals description matched that provided by the anonymous tipster. But that's the best I can come up with. I think you just have a conflict in the evidence. Well, Your Honor, we do have the actual reports, and the reports do not say anonymous. Well, but that doesn't preclude, as I said, the possibility of oral communications. And, of course, we're also putting to one side Mr. Beals' own sworn anonymous statement, a statement that it was anonymous in the original complaint and his statements in the amended complaint, making it quite clear that the context is that it's anonymous. So I just think there's a lot of dispute in the evidence about the nature of this tip. Well, he does quote the officers in his amended complaint. He says what they said was, quote, we received a phone call. You are selling drugs. Right, and read the next sentence in the amended complaint. It goes on to say, to talk about anonymous tips. Well, assuming. So in context, it seems that he's not at all changing what he's saying. Assuming it is anonymous, Your Honor. The Navarette case made it clear, the Supreme Court said that although an anonymous tip seldom provides sufficient indicia of reliability to, on its own, create reasonable suspicion, when there are reasonable indicia of reliability, it can standing alone. And in the Navarette case, the court looked to the contemporaneous nature of the complaint and the police action, which is what we have here. Detective Stralow said they immediately drove the two and a half to two blocks. Navarette's a 911. It is, Your Honor. Which makes a big difference because you have exactly what Judge Posner was asking about there. You've got the caller ID. You know you can trace back every 911 call. The 911 system has been understood to be reliable. That you don't have here. And all you have is, I mean, I could go out and describe anybody I wanted to in the streets of Chicago if I happened to be cross at them and get the police to go frisk them. That is true, Your Honor. And that's not a good rule, is it? I mean, goodness knows, in today's world, that's a terrible rule. This call was recorded. But no caller ID, as far as this record shows. The record does not show whether there was caller ID. That is correct. But then you have Mr. Beale's behavior upon the police arrival. Like almost anyone else, he seemed nervous. You know, the description of him as nervous and his furtive behavior describes the reaction of typical law-abiding as well as non-law-abiding citizens when they're confronted by authority. There's little of substance to support the initial search for weapons. And the police never even say they think that's there. And we have to assume his hand's in his pocket. That's what he says. He says he put his hand in his pocket. It was already in his pocket, he said. And they said? They said he put it into his pocket. He said it was already there. We have to take the facts in the light most favorable to the non-moving party. We do, Your Honor. So you can't fight that. You just have to take that one. Standing alone, each one of these factors may not be sufficient for reasonable suspicion, but it's the context, it's the totality of the circumstances which give rise to reasonable suspicion. Is there anybody in this high-crime area in Kenosha who would not be subject to a police frisk on your theory? Well, Mr. Beal's companion was not frisked. But they could have, in your view. I don't believe they had reasonable suspicion to frisk her, and they didn't. They had individualized suspicion. Mr. Beal's behavior was evasive, furtive. He made eye contact, immediately looked away, and turned to walk away. But he doesn't. He's completely cooperative. He gives them his name. He doesn't walk away. He doesn't do things that a lot of people have done. Detective Stralow said he turned to walk away, and then they ordered him to come back. Right, and he did. And he did. He's on his own personal property, his aunt's driveway. It's not like, I don't know. I mean, it's kind of a police state, isn't it? I'm not sure I would concur with it, that it's a police state in Kenosha. I've been trying to figure out how they possibly could determine in the pat-down search that a soft object that felt like tissue was apparently drugs, or that a hard object identifiable as keys could be a weapon, and thus justify some further search. I'm having trouble with that, too. As the detective explained in his experience, it is common for narcotics to be carried in that way. In fact, that's what Mr. Beal was doing. It's also common for Kleenex to be carried that way to use on your nose. He doesn't testify that there's anything about this tissue that would have revealed the existence of the plastic bags or anything. That's what bothers me. If he had said it felt crunchier, he might have had a Dickinson problem. But there's nothing he says other than it feels like tissue. So I guess the concern is that things that are completely innocent most of the time are automatically suspect when you think the person is in the wrong neighborhood? Well, it's not that, Your Honor. The experience of the officer, he said based on his experience. They always say that. I place no weight on that. They always say that. Based on my experience, I knew that this package of Kleenexes was really drugs. What does that mean? Well, Your Honor, the experience of the officer is a factor in the totality of the circumstances to determine whether you have reasonable suspicion. So actually it's an after the fact. If it works out that they really were drugs, then everything was fine because the officer's experience was vindicated and they really were drugs. But if it works out after the fact that it wasn't drugs, then somebody's Fourth Amendment violation has been shown. It's important to stress the issue here is qualified immunity. Was it reasonable, even if there is evidence from which you can conclude a jury could say there's a violation of the Fourth Amendment, the question is, is it reasonable for the officer to conclude he had reasonable suspicion? Because under qualified immunity, officers are allowed to make mistakes and still be immune from civil liability. And so the issue here is qualified immunity. What did the judge mean when he said Beller knew who the informant was? Your Honor, the district court felt that there was not any evidence that it was an anonymous tip. That was the testimony of the detectives at the suppression hearing. That was in their affidavit. But Beller didn't give a name for this person. Not at the suppression hearing, no. Never. Well, then, if he knew who the informant was, he would have been able to give his name, wouldn't he? It's my understanding, Your Honor, that law enforcement is hesitant to give names of informants until they have to. It's my understanding that law enforcement is hesitant to reveal the name. Well, they're certainly going to tell the judge. They can put it in a, you know, secret letter or something, right? There was extensive colloquy between the judge and the prosecutor at the suppression hearing on that very issue. And the judge ruled that they didn't have to disclose the name. Well, that was a mistake. Surely Beller should have disclosed the name of the informant to the judge. What possible reason could he have for not doing that? I believe the understanding of law enforcement is that it jeopardizes the safety of the informant. How what? They're afraid the judge is going to— they can't expect the judge to keep a confidence? Is that what it is? The judge indicated, Your Honor, that the name of the informant would not have— he would not have recognized the name. It would not have helped his assessment. And I believe— No, but of course, once he gets— He actually had a name? Let me—don't interrupt me. Once he gives it—once the judge has the name, he can ask the officer, you know, in private, with just a lawyer's present or what have you, okay, how do you know this guy? What prior dealings have you had with him? And so on. Just to be told that he knows who this person is but won't tell you anything about it, that doesn't establish the reliability of the informant. That was the colloquy that they had at the state court level, Your Honor. I think Judge Rovner had one more question before you sit down, please. With what just happened, I forgot it. All right. Thank you very much, Mr. Dume. Anything further, Mr. Shelf? Just a couple quick points, Your Honor. Thank you. So, Your Honors, we think that the simple and straightforward way to resolve this case is on our first issue about the legality of the stop. It is dispositive, and my friend on the other side raised qualified immunity. It is just as dispositive on qualified immunity because if the informant here was anonymous, Florida v. J.L. is on all fours. As Your Honor said, there is evidence in the record to that effect, which I won't repeat unless there are questions. And then the only counterargument sort of on the law here that I've heard is this argument that essentially Nivret changed the law. Well, are you asking for a summary judgment or are you asking for a trial? We're asking for a trial, Your Honor. The district court thought we'd move for summary judgment, but honestly, I don't think that's a great reading of the record below. And they would be entitled, I think, to respond. But just to finish my point about Nivret, that's really their only legal argument that this is a Nivret case simply because of the recording. But as you said, Your Honor, Judge Wood, that would be a terrible rule to say anything recorded automatically becomes reasonable suspicion because it doesn't really tell you anything if you want to track down an anonymous tipster who's given a false tip. And we don't think that's a reasonable reading of Nivret, even on qualified immunity. If there's nothing further, we'll rest there. All right. Apparently not. Thank you very much. And you two were recruited, I believe. Yes, Your Honor. We appreciate your efforts on behalf of your client and for the court. Thanks as well to Mr. Dumais. So we will take the case under advisement.